1  CROSNER LEGAL, P.C.
   Michael T. Houchin (SBN 305541)
2  mhouchin@crosnerlegal.com
   Craig W. Straub (SBN 249032)
3  craig@crosnerlegal.com
   Zachary M. Crosner (SBN 272295)
4  zach@crosnerlegal.com
5  9440 Santa Monica Blvd. Suite 301
   Beverly Hills, CA 90210
6  Tel: (866) 276-7637
   Fax: (310) 510-6429
7  *Attorneys for Plaintiffs and the Proposed Classes*

8

9                    **UNITED STATES DISTRICT COURT**

10            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12 | RAMON HURST and TRICIA          | Case No. 3:24-cv-02314-TLT
   | CAVALLARO individually, and on behalf
13 | of all others similarly situated,  | **FIRST AMENDED CLASS ACTION**
   |                                  | **COMPLAINT**
14 |          Plaintiffs,

15 |      v.

16 |
   | DREYER'S GRAND ICE CREAM, INC.,
17 |
   |          Defendant.
18 |                                  | DEMAND FOR JURY TRIAL

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

## INTRODUCTION

1.     Plaintiffs Ramon Hurst and Tricia Cavallaro ("Plaintiffs") on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby bring this action against Defendant Dreyer's Grand Ice Cream, Inc. ("Defendant" or "Dreyer's"), and upon information and belief and investigation of counsel, allege as follows:

2.     This is a consumer class action brought under the laws of California and New York for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), violations of New York General Business Laws ("NY GBL") §§ 349-350, and for breach of express warranty.

3.     Defendant manufactures, distributes, advertises, markets, and sells frozen fruit bar products under the Outshine brand. The Outshine products at issue are the Outshine Fruit Bars Grape and the Outshine Fruit Bars Mango with Tajin. (collectively "the Products").

4.     The labels for the Products prominently display, in a conspicuous advertising panel on the side of the label, the claim that these Products contain "**No Artificial Colors or Flavors.**"

5.     This statement is false. Each of the Products are made with DL-malic acid— an artificial flavoring ingredient used in food and beverage products., including the Products at issue here.

6.     Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product that is naturally flavored.

7.     Plaintiffs, who purchased the Products in California and New York, were deceived by Defendant's unlawful conduct and bring this action on their own behalf and on behalf of consumers to remedy Defendant's unlawful acts.

FIRST AMENDED CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

8.      On April 18, 2024, Defendant removed this action from the California Superior Court for the County of Alameda pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1453. (Dkt. No. 1). This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this county. Defendant maintains its principal place of business within this county. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiffs and members of the Classes in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiffs and the Classes that Defendant knows is likely to be suffered by Californians.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because Defendant removed this action from the California Superior Court for the County of Alameda.

**PARTIES**

11.     Defendant Dreyer's Grand Ice Cream, Inc. is a Delaware corporation that maintains its principal place of business at 5929 College Avenue, Oakland, California 94618.

FIRST AMENDED CLASS ACTION COMPLAINT

1    Defendant is registered to do business in California as entity number 1295644. At all times

2    during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the

3    Products.

4          12.    Plaintiff Ramon Hurst is a resident of California. Plaintiff Hurst purchased one

5    of the Products during the class period in California. Plaintiff Hust relied on Defendant's

6    deceptive advertising and labeling claims as set forth below.

7          13.    Plaintiff Tricia Cavallaro is a resident of New York. Plaintiff Cavallaro

8    purchased one of the Products during the class period in New York. Plaintiff Cavallaro relied

9    on Defendant's deceptive advertising and labeling claims as set forth below.

10    <u>FACTUAL ALLEGATIONS</u>

11    **DEFENDANT CLAIMS THAT THE PRODUCTS CONTAIN "NO ARTIFICIAL COLORS OR**

12    **FLAVORS"**

13          14.    The side labels for each of the Products state that the Products contain "No

14    Artificial Colors or Flavors" thereby misleading reasonable consumers into believing that the

15    Products are free from artificial flavoring ingredients. However, each of the Products contain an

16    artificial flavoring ingredient called DL-malic acid. The labels for each of the Products are

17    shown below.

18    Outshine Fruit Bars Grape



CROSNER LEGAL, P.C.

INGREDIENTS: CONCORD GRAPE PUREE, WATER, CANE SUGAR, GRAPE JUICE FOR COLOR, MALIC ACID, GUAR GUM, NATURAL FLAVOR, ASCORBIC ACID (VITAMIN C), CAROB BEAN GUM.
INGREDIENTES: PURÉ DE UVA CONCORD, AGUA, AZÚCAR DE CAÑA, JUGO DE UVA PARA DAR COLOR, ÁCIDO MÁLICO, GOMA DE GUAR, SABOR NATURAL, ÁCIDO ASCÓRBICO (VITAMINA C), GOMA DE ALGARROBA.

<u>Outshine Fruit Bars Mango with Tajin</u>




INGREDIENTS: MANGO PUREE, WATER, MANGO JUICE FROM CONCENTRATE (WATER, MANGO JUICE CONCENTRATE), CANE SUGAR, SEASONING DIP (WATER, TAJIN® CLASICO SEASONING [CHILI PEPPERS, SEA SALT, POTASSIUM CITRATE, CITRIC ACID, DEHYDRATED LIME JUICE], SPICE, XANTHAN GUM), LEMON JUICE FROM CONCENTRATE (WATER, LEMON JUICE CONCENTRATE), NATURAL FLAVOR, GUAR GUM, CAROB BEAN GUM, ASCORBIC ACID (VITAMIN C, MALIC ACID).

15.    The labels of each of the Products also display pictures of fresh fruit further giving reasonable consumers the impression that the Products are free from artificial flavoring ingredients.

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

**THE PRODUCTS CONTAIN ARTIFICIAL DL-MALIC ACID**

16.     Malic acid is a dicarboxylic acid that is commonly used in food and beverage products. Malic acid has two stereoisomeric forms. L-malic acid occurs naturally in various foods. 21 CFR § 184.1069(a). However, "Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid." *Id*. "The primary commercial production of malic acid is currently based on petrochemical routes, such as the hydration of maleic anhydride generated from the oxidation of benzene or butane at high temperature and high pressure, yielding a racemic mixture of D- and L-malic acid."[1]

17.     Defendant uses artificial DL-malic acid in the Products. On October 27, 2023, a reputable independent food laboratory tested the Outshine Fruit Bars Grape Product for the presence of DL-malic acid. The Product tested positive for both the D- and L- isomers of malic acid demonstrating that Defendant uses synthetic DL- malic acid in the Products.[2]

**DL-MALIC ACID IS AN ARTIFICIAL FLAVORING INGREDIENT IN THE PRODUCTS**

18.     Malic acid functions as a flavoring ingredient in the Products. The Food and Drug Administration ("FDA") defines an artificial flavor as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR § 101.22(a)(1). DL-malic acid meets the definition of an artificial flavor because its function is to impart flavor in the Products and it is not derived from a natural source like a spice, fruit, or vegetable. Because malic acid is an artificial flavoring ingredient, Defendant's "No Artificial Colors or Flavors" labeling statement is false and misleading.

---

[1] Zhen Wei, et al., *Microbial Biosynthesis of L-Malic Acid and Related Metabolic Engineering Strategies: Advances and Prospects,* FRONT. BIOENG. BIOTECHNOL. (Sept. 29, 2021), available at https://www.frontiersin.org/articles/10.3389/fbioe.2021.765685/full

[2] *See* **Exhibit A** attached hereto.

19.    FDA regulations recognize that malic acid is used as an artificial "flavoring agent" in food and beverage products. 21 CFR § 184.1069(c).

20.    The Flavoring Extract Manufacturer's Association also recognizes that malic acid is a flavoring ingredient.[3] Indeed, the "main use" of acidulants like malic acid "is to provide and enhance flavor of foods and beverages."[4]

21.    Malic acid has a distinct flavor profile and it provides a sour taste when added to food and beverage products.[5] This flavor profile has been described as "mellow, smooth, persistent sourness reminiscent of fruit."[6] For this reason, malic acid is often used in fruit flavored products to simulate the flavor of apple juice as well as other fruit juices.[7] Acidulants like citric acid, malic acid, and tartaric acid "are responsible for the authentic taste and flavor" of certain fruits.[8]

22.    Malic acid functions as a flavoring ingredient in the Products regardless of whether Defendant intended to use malic acid as a flavoring ingredient. This is because malic acid imparts a flavor that is reminiscent of fruit when used in the Products. Defendant's Products— which depict ripe fresh fruit on the labels— utilize malic acid to impart flavor. The

[3] Richard L. Hall, et al., *Progress in the Consideration of Flavoring Ingredients Under the Food Additives Amendments*, J. OF THE INST. OF FOOD TECHNOLOGIES, *available at* https://www.femaflavor.org/sites/default/files/3.%20GRAS%20Substances%282001-3124%29_0.pdf

[4] E. Ramos Da Conceicao Neta et al., *The Chemistry and Physiology of Sour Taste—A Review,* J. OF FOOD SCIENCE (Mar. 12, 2007), *available at* https://ift.onlinelibrary.wiley.com/doi/full/10.1111/j.1750-3841.2007.00282.x

[5] P. Hartwig, et al., *Flavor Characteristics of Lactic, Malic, Citric, and Acetic Acids at Various pH Levels,* J. OF FOOD SCIENCE (March 1995), *abstract available at* https://ift.onlinelibrary.wiley.com/doi/abs/10.1111/j.1365-2621.1995.tb05678.x

[6] *Self-Teaching Guide for Food Acidulants,* BARTEK.

[7] M.Y. CoSeteng, *Influence of Titratable Acidity and pH on Intensity of Sourness of Citric, Malic, Tartaric, Lactic and Acetic Acids Solutions and on the Overall Acceptability of Imitation Apple Juice,* CANADIAN INST. OF FOOD SCI. AND TECH. J. (Feb. 1989), *abstract available at* https://www.sciencedirect.com/science/article/abs/pii/S031554638970300X

[8] *Acidulants- Technical Bulletin,* BRENNTAG FOODS, *available at* https://www.brenntag.com/media/documents/denmark/technical_bulletin_acidulants.pdf

CROSNER LEGAL, P.C.

artificial malic acid in the Products is a "Flavoring agent" because it is added to the Products "to impart or help impart a taste or aroma in food." 21 C.F.R. § 170(0)(12).

**DEFENDANT FAILS TO DISCLOSE THAT THE PRODUCTS ARE ARTIFICIALLY FLAVORED**

23.    Pursuant to federal regulations, if a food "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored', in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored'." 21 CFR § 101.22(i)(1)(iii).[9]

24.    The characterizing flavor of the Outshine Fruit Bars Grape product is grape. The characterizing flavor of the Outshine Fruit Bars Mango with Tajin is mango. Malic acid is used in the Products to simulate, resemble and reinforce the characterizing flavors. Accordingly, the Products are required to be labeled as "Artificially Flavored." Defendant omits this legally required disclosure and instead falsely labels the Products as containing "No Artificial Colors or Flavors."

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

25.    Consumers, like Plaintiffs, relied on Defendant's "No Artificial Colors or Flavors" labeling statement. The "No Artificial Colors or Flavors" statement on the labels of the Products is material to reasonable consumers. "Consumer desire for naturally flavored products is an emerging trend and one that may have staying power" according to Paul Manning,

---

[9] The FDA regulations at issue are incorporated into California law through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Health & Saf. Code § 110100. In addition to the Sherman Law's blanket provision, it adopts the regulatory provisions at issue here.

CROSNER LEGAL, P.C.

chairman, chief executive officer and president of Sensient Technologies.[10] Consumers perceive products that are naturally flavored to be healthier.[11] According to Forbes, 88% of consumers are willing to pay more for healthier foods.[12] "A 2014 study from the marketing research firm Nielsen showed that more than 60 percent of Americans said the absence of artificial colors or flavors is important to their food purchase decisions."[13]

26.     Defendant charges a price premium for the Products which is associated with the "No Artificial Colors or Flavors" label claim. For example, the Outshine Fruit Bars Grape which contain 6 bars retails for $6.99,[14] or $1.165 per serving. Defendant's competitor, Popsicle®, only charges $5.99 for a pack of 18,[15] or $0.333 per serving. At the appropriate time, Plaintiff's economic expert will calculate a price premium attributable to the "No Artificial Colors or Flavors."

27.     Plaintiff and putative class members are ordinary consumers and do not scour the fine print ingredient list. Consumers trust that companies, like Defendant, do not place false statements on the labeling of their products.

28.     Plaintiffs and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's

---

[10] K. Nunes, *Using natural ingredients to create authentic, fresh flavors*, FOOD BUS. NEWS (Sept. 20, 2018), *available at* https://www.foodbusinessnews.net/articles/12478-using-natural-ingredients-to-create-authentic-fresh-flavors

[11] L. Dornblaser, *Colors and flavors help drive consumer trend of health,* FOOD AND BEVERAGE INSIDER (Sept. 20, 2022), *available at* https://www.foodbeverageinsider.com/colors-flavors/colors-and-flavors-help-drive-consumer-trend-of-health

[12] N. Gagliardi, *Consumers Want Healthy Foods--And Will Pay More For Them*, FORBES (Feb. 18, 2015), *available at* https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/?sh=769abecb75c5

[13] C. Doering, *Demand for natural foods is changing iconic products*, DES MOINES REGISTER (April 5, 2015), *available at* https://www.desmoinesregister.com/story/money/agriculture/2015/04/05/demand-natural-food-ingredients-easter-candy-confection-iconic-brands/25335383/

[14] *See* https://www.vons.com/shop/product-details.142050823.html

[15] *See* https://www.target.com/p/popsicle-orange-cherry-grape-variety-ice-pops-18ct/-/A-13475408

CROSNER LEGAL, P.C.

actions, they would not have spent. Plaintiffs and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiffs, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial flavoring ingredient. The

### PLAINTIFFS' PURCHASE OF THE PRODUCTS

29.     Plaintiff Ramon Hurst has purchased the Outshine Fruit Bars Grape product with the "No Artificial Colors or Flavors" label claim during the class period. Plaintiff's last purchase of the Product was in approximately October of 2023 from a Walmart store located in California.

30.     Plaintiff Hurst saw and relied on the "No Artificial Colors or Flavors" claim on the labels of the Products.  Plaintiff Hurst would not have purchased the Products, or would have paid less for the Products, had he known that the products actually contain an artificial flavoring ingredient. As a result, Plaintiff Hurst suffered injury in fact when he spent money to purchase the Products he would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff Hurst desires to purchase the Products again if the labels of the products were accurate and if the products actually contained "No Artificial Colors or Flavors." However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

31.     Plaintiff Tricia Cavallaro has purchased the Outshine Fruit Bars Grape product with the "No Artificial Colors or Flavors" label claim during the class period. Plaintiff Cavallaro's last purchase of the Product was in approximately 2023 from a Stop & Shop store located in New York.

32.     Plaintiff Cavallaro saw and relied on the "No Artificial Colors or Flavors" claim on the labels of the Products.  Plaintiff Cavallaro would not have purchased the Products, or would have paid less for the Products, had she known that the products actually contain an artificial flavoring ingredient. As a result, Plaintiff Cavallaro suffered injury in fact when she spent money to purchase the Products she would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff Cavallaro desires to purchase the Products again

CROSNER LEGAL, P.C.

if the labels of the products were accurate and if the products actually contained "No Artificial Colors or Flavors." However, as a result of Defendant's ongoing misrepresentations, Plaintiff Cavallaro is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

NO ADEQUATE REMEDY AT LAW

33.     Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

34.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiffs allege Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Specifically, Defendant has violated 1 CFR § 101.22(i)(1)(iii) and California Health & Saf. Code § 110100, among other laws. Plaintiffs and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

35.     A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendant continues to misrepresent the Products as containing "No Artificial Colors or Flavors" when the Products actually contain the artificial flavoring ingredient DL-malic acid. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair,

CROSNER LEGAL, P.C.

fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial flavoring ingredient. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs' investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

36.    It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

37.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Classes:

CROSNER LEGAL, P.C.

**Nationwide Class**

All persons who purchased the Products for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated.

**California Class**

All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

**New York Class**

All persons who purchased the Products for personal use in New York within the applicable statute of limitations until the date class notice is disseminated.

38.    Excluded from the classes are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

39.    Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

40.    The Classes are appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

42.    Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.      Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.      Whether Plaintiffs and the Class are entitled to injunctive relief;

e.      Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

43.     <u>Typicality</u>: Plaintiffs are members of the Classes that Plaintiffs seeks to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Classes were susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

44.     <u>Adequacy</u>: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seekto represent; the consumer fraud claims are common to all other members of the Classes, and Plaintiffs have a strong interest in vindicating the rights of the classes; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Classes. The Class Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

45.     The Classes are properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

CROSNER LEGAL, P.C.

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

46.    Additionally or in the alternative, the Classes also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Classes thereby making final declaratory and/or injunctive relief with respect to the members of the Classes as a whole, appropriate.

47.    Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Classes, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiffs and the Class members.

48.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

CROSNER LEGAL, P.C.

## FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

### Cal. Civ. Code § 1750 *et seq.*

49.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

50.    Plaintiff Hurst brings this claim under the CLRA individually and on behalf of the Nationwide Class and California Class against Defendant.

51.    At all times relevant hereto, Plaintiff Hust and the members of the Nationwide Class and California Class were "consumer[s]," as defined in California Civil Code section 1761(d).

52.    At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

53.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

54.    The purchases of the Products by Plaintiff Hurst and the members of the Nationwide Class and California Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

55.    Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Colors or Flavors." Defendant failed to disclose that the Products contain an artificial flavoring ingredient called DL-malic acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial flavoring ingredient to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)    Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)    Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)    Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)    Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

56.    Defendant violated the CLRA because the Products were prominently advertised as being "No Artificial Colors or Flavors" but, in reality, the Products contain an artificial flavoring ingredient called DL-malic acid. Defendant knew or should have known that consumers would want to know that the Products contain an artificial flavoring ingredient.

57.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

58.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

59.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein. Plaintiff also seeks actual damages, punitive damages, and attorneys' fees and costs for Defendant's violations of the CLRA.

60.    Pursuant to California Civil Code section 1782, Plaintiff Hurst sent a written demand letter to Defendant on November 8, 2023 requesting that Defendant remedy the violations alleged herein. More than thirty days have passed since Defendant received Plaintiff's demand letter and Defendant has failed to take any corrective action. Accordingly, Plaintiff seeks actual damages, punitive damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

61.    Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing that this action was commenced in a proper forum.

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200** *et seq.*

62.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

63.    Plaintiff Hurst brings this claim under the UCL individually and on behalf of the Nationwide Class and California Class against Defendant.

64.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

65.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 21 CFR § 101.22(i)(1)(iii), California Health & Saf. Code § 110100, and by breaching express and implied warranties. Plaintiff Hurst, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

66.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff Hurst and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff Hurst and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial flavoring ingredient) of which they had exclusive knowledge. While Plaintiff Hurst and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a

result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

67.     Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing that the Products are actually free from artificial flavors.

68.     Plaintiff Hurst and the other members of the Nationwide Class and California Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff Hurst and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff Hurst and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

69.     Defendant's wrongful business practices and violations of the UCL are ongoing.

70.     Plaintiff Hurst and the Nationwide Class and California Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff Hurst and the Class seek interest in an amount according to proof.

71.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff Hurst, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

**THIRD CLAIM FOR RELIEF**

**Breach of Express Warranty**

72.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

73.     Plaintiff Hurst brings this claim for breach of express warranty individually and on behalf of the Nationwide Class and California Class against Defendant.

74.     As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "No Artificial Colors or Flavors."

75.     Plaintiff Hurst and the Nationwide Class and California Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain "No Artificial Colors or Flavors."

76.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

77.     In fact, the Products do not conform to Defendant's representations because the Products contain an artificial flavoring ingredient called DL-malic acid. By falsely representing the Products in this way, Defendant breached express warranties.

78.     Plaintiff Hurst and the Class Members relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

79.     Defendant had full knowledge that the Products contain an artificial flavoring because Defendant purchased the artificial malic acid from ingredient manufacturer(s), included the DL-malic acid in the Product, and, with this knowledge, intentionally labeled the Products as containing "No Artificial Colors or Flavors." Thus, Defendant had knowledge of the falsity of the statement "No Artificial Colors or Flavors."

80.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the

bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff Hurst and Class Members would not have purchased the Products or would not have paid as much as they did for them.

**FOURTH CLAIM FOR RELIEF**

**Violations of New York General Business Law § 349**

81.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

82.     Plaintiff Cavallaro brings this claim on behalf of the New York Class.

83.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

84.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

85.     Plaintiff Cavallaro and the New York Class members are consumers who purchased the Products from Defendant for their personal use.

86.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they contain "No Artificial Colors or Flavors." Despite that representation, however, the Products contain an artificial flavoring ingredient.

87.     The foregoing deceptive acts and practices were directed at consumers.

88.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

89.     As a result of Defendant's deceptive practices, Plaintiff Cavallaro and the New York Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

CROSNER LEGAL, P.C.

90.     On behalf of herself and the New York Class members, Plaintiff Cavallaro seeks to recover their actual damages or fifty dollars per unlawful transaction, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

<u>**FIFTH CLAIM FOR RELIEF**</u>

**Violations of New York General Business Law § 350**

91.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

92.     Plaintiff Cavallaro brings this count on behalf of the New York Class.

93.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

94.     Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that they contain "No Artificial Colors or Flavors." Despite that representation, however, the Products contain an artificial flavoring ingredient called DL-malic acid.

95.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

96.     Defendants' misrepresentations have resulted in consumer injury or harm to the public interest.

97.     As a result of Defendant's false advertising, Plaintiff Cavallaro and the New York Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

98.     On behalf of herself and the New York Class members, Plaintiff Cavallaro seeks to recover their actual damages or five hundred dollars per unlawful transaction, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

<u>**REQUEST FOR RELIEF**</u>

Plaintiffs, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.      Ordering damages in amount which is different than that calculated for restitution for Plaintiffs and the Class;

e.      Ordering statutory damages in the amount of $50 per transaction pursuant to NY GBL § 349 and statutory damages in the amount of $500 per transaction pursuant to NY GBL § 350;

f.      Ordering treble damages and punitive damages;

g.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

h.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

i.      Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.


Dated: May 9, 2024                          CROSNER LEGAL, P.C.


                                            By:      */s/ Michael T. Houchin*
                                                     MICHAEL T. HOUCHIN

                                            9440 Santa Monica Blvd. Suite 301
                                            Beverly Hills, CA 90210
                                            Tel: (866) 276-7637

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

Fax: (310) 510-6429
mhouchin@crosnerlegal.com

*Attorneys for Plaintiffs and the Proposed*
*Classes*

CROSNER LEGAL, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Affidavit Pursuant to Civil Code Section 1780(d)

I, MICHAEL T. HOUCHIN, declare as follows:

1.      I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiffs.

2.      This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.      Defendant Dreyer's Grand Ice Cream, Inc. has done, and is doing, business in California, including in this judicial district. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.

4.      Defendant maintains its principal place of business at 5929 College Avenue, Oakland, California 94618.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed May 9, 2024 at San Diego, California.

CROSNER LEGAL, P.C.

By:      */s/ Michael T. Houchin*
         MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

FIRST AMENDED CLASS ACTION COMPLAINT